UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 29)**

**I.    Introduction**

Suri Payala ("Plaintiff") brought this putative class action against Wipro Technologies, Inc., Wipro, LTD and Wipro Inc. ("Defendant") in the Los Angeles Superior Court. Complaint, Dkt. 1-1. Defendant is a multinational corporation based in Bangalore, India that outsources technology workers to entities in the United States. Plaintiff alleges that Defendant misclassified hundreds of its employees who worked in California as exempt from overtime laws.

On February 19, 2016, Plaintiff filed a Motion for Class Certification ("Motion"). Dkt. 29. Pursuant to Fed. R. Civ. P. 23(b)(3), the Motion seeks to certify the following class:

> All former and current Wipro employees who while working in California during any portion of the period of March 30, 2011 through the date the class notice is mailed: (a) had the job titles listed below; (b) received guaranteed salaries below the statutory threshold for computer workers ($6,587.50 in 2011; $6,752.19 in 2012; $6,927.75 in 2013; $7,010.83 in 2014; $7,165.12 in 2015; and $7,265.43 in 2016); and (c) recorded time on Wipro's TMS program that would entitle them to overtime payments under California law.
>
> Covered job titles are: (1) Solutions Delivery Analyst; (2) Specialist; (3) Technical Lead/Leader; (4) Architect; (5) Test Lead; (6) Project Lead/Leader; (7) Consultant [including Associate and Technical Consultant]; (8) Project Engineer; (9) Sr. Test Engineer; and (10) Sr. Software Engineer.

*Id.* at 2.[1]

---

[1] Defendant filed objections to certain evidence presented by Plaintiff's in support of the Motion. Dkt. 30-1. Rulings on these objections are set forth in a separate Order. Dkt. 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

A hearing on the Motion was held on June 6, 2016, and the matter was taken under submission. Dkt. 38. For the reasons stated in this Order, the Motion is **DENIED**.

II.   **Background**

    A.   The Parties

        1.   Defendant

As noted, Defendant is a multinational technology corporation based in Bangalore, India. Kellner Decl., Dkt. 29-2 (Ex. G at 39:11-12). It outsources employees to companies in the United States. They provide computer support, trouble shooting and testing related to information technology. Dkt. 1-1 ¶ 13. It has more than 11,000 employees working in the United States, most of whom have received temporary work permits pursuant to certain visa programs. Kellner Decl., Dkt. 29-2 (Ex. G at 81:2-13).

        2.   Plaintiff

Plaintiff is a citizen of India. Payala Decl., Dkt. 29-2 ¶ 4. His employment with Defendant began in April 2008 and ended in August 2015. *Id.* ¶ 2. During his employment, he was assigned to work in the United States on four separate occasions. *Id.* ¶ 6. On each occasion he received a work visa prepared by Defendant. *Id.* ¶ 6.

For the first six months of 2014, Plaintiff was assigned to work at DirecTV in California. Dkt. 1-1 ¶ 6. While there, Plaintiff had the job title, "Architect." Payala Decl., Dkt. 29-2 ¶ 8. Defendant creates such job titles, which "generally describe the nature of the work that the employee will do." *Id.* The position of "Architect" generally involves "tasks associated with the testing and maintenance of existing computer program products at [one of Defendant's customers]." *Id.* Plaintiff's assignments at DirecTV were primarily related to "software testing of existing DirecTV products." *Id.* ¶ 9.

        3.   The Putative Class

The putative class includes those employees who held one or more of the following ten positions: "(i) Solutions Delivery Analyst; (ii) Specialist; (iii) Technical Lead/Leader; (iv) Architect; (v) Test Lead; (vi) Project Lead/Leader; (vii) Consultant [including Associate and Technical Consultant]; (viii) Project Engineer; (iv) Sr. Test Engineer; and (x) Sr. Software Engineer. The Complaint alleges that employees in each of these positions provided "computer support, trouble shooting, testing related to repairs and trouble-shooting and technical services." Dkt. 1-1 ¶ 27.

Richard Kellner ("Kellner"), counsel for Plaintiff, has declared that he verified the "correctness of the class definition" by cross-checking Defendant's job descriptions with task description entries recorded by 160 sample employees in the time sheets provided during discovery. Kellner Decl., Dkt. 29-2 ¶ 25. He adds that this ensured that the class members "predominately worked on troubleshooting, testing and debugging of existing third party company's products." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

    4.    <u>Declaration of Kamal Jain</u>

In support of the Motion, Plaintiff also submitted the declaration of one putative class member, Kamal Jain ("Jain"). Jain Decl., Dkt. 29-1. Jain was employed by Defendant from 2007 through 2015. *Id.* ¶ 2. During an assignment in the United States with Mazda Motor Company ("Mazda") in Irvine, California, Jain held the position of "Technical Lead." *Id.* ¶¶ 4-5. His duties were "primarily that of testing and trouble-shooting the existing Mazda computer programs developed by Wipro. This was comparable to the type of work done by other Wipro employees at Mazda." *Id.* ¶ 5. Jain states that he did not engage in any managerial duties or work related to Mazda's general business operations. *Id.*

Jain worked more than regular hours, *i.e.*, overtime, in March 2015. *Id.* ¶ 6. When he inquired as to why Defendant did not compensate him at overtime rates for this work, he was told that he was an exempt employee because he was involved in computer programming. *Id.* ¶¶ 7-8. Certain of these communications are documented in email exchanges attached to Jain's declaration. *Id.* (Ex. A-B).

    B.    **Defendant's Policies Regarding Classification of Exempt Employees**

        1.    <u>Written Policy</u>

Defendant's U.S. Policy Manual provides in pertinent part:

> **1.8 Definition of Employment Terms**
> For purposes of salary administration, employment, and other personnel matters, it is necessary to classify employees into certain categories. Wherever used, their meaning will be as follows:
> > **(a) Exempt/Non Exempt**. Job classifications fall into two types, as defined by Federal law. This classification determines who is or is not eligible for overtime pay. It depends primarily on the nature of your job. Below is a summary of these definitions.
> > > **(i) Exempt:** Exempt employees are paid commission or salary. Exempt employees are not eligible for overtime pay. Employees are exempt from the overtime provisions of the Fair Labor Standards act and state law, and meet the specific criteria for exemption. Examples include Executive, administrative, professional, consultants, software programmers or outside sales positions.
> > > **(ii) Nonexempt:** Employees whose jobs do not fit the above requirements are nonexempt. Nonexempt employees will be paid overtime for properly authorized work in excess of 40 hours in a given week. We will comply with any state overtime provisions as applicable.

Kellner Decl., Dkt. 29-2 (Ex. D).

        2.    <u>Exempt Designation Decisions</u>

Defendant acknowledges that it does not document its reason for each exemption decision. *Id.* (Ex. G at 22:14-22). In a deposition, Defendant's representative testified that a team of employees from Human Resources, the legal department and the business unit would determine each employee's exemption status. *Id.* (Ex. G. at 167:12-168:2). The members of this team would vary over time. *Id.* Plaintiff argues that Defendant has yet to produce any evidence verifying that Defendant actually made such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

individualized exemption determinations. Kellner Decl., Dkt. 29-2 ¶ 35.

    C.    Defendant's Computerized Wage and Time Records

Defendant's written policy requires each employee to record the time he or she works. *Id.* (Ex. E). Defendant maintains a Time Management System ("TMS") in which each employee is "required to update efforts under various categories specific to project/non project work." *Id.*

During discovery, Defendant produced spreadsheets that contained time entries from the TMS for a sample of approximately 160 putative class members. Kellner Decl., Dkt. 29-2 ¶¶ 22-23 (citing *id.* (Ex. I)). The spreadsheets include several fields including the following: (i) the employee identification number; (ii) task description; (iii) hours devoted for project efforts; (iv) hours devoted to non-project efforts; (v) the project date; (vi) the location where the work was performed; and (vii) the date the time was entered. *Id.* (Ex. I). Of these 160 putative class members, more than 56% recorded unpaid overtime hours. *Id.* ¶ 29.

**III.**    **The Parties' Contentions as to the Classification of Class Members**

The Complaint alleges that putative class members were misclassified as "exempt" employees under state and federal law. Exempt employees are not entitled to the payment of overtime. Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(17), computer software employees can be categorized as exempt if they are paid more than approximately $57,000 per year. However, exemptions as to computer software employees who work in California are subject to California statutes and regulations set forth in the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders.

IWC Wage Order 4-2001 provides four separate grounds for exempting computer workers. These are called the executive, administrative, professional and computer software exemptions. Pursuant to Cal. Lab. Code § 515.5, the computer software exemption applies only if an employee's salary exceeds an amount set each year by the California Department of Labor.[2]

Plaintiff argues that Defendant misclassified putative class members based on its incorrect application of federal law. Thus, Defendant applied the federal standard, which permits an exemption for computer programmers who earn more than $57,000 per year, rather than California's standard, which permits an exemption only for computer programmers whose yearly earnings exceed a higher amount. *See supra.* Plaintiff argues that this is a "classic case of an employer falling into the trap of ignoring California's unique wage and hour laws for its employees." Dkt. 29 at 20.

Because the putative class has been defined as including only California employees whose rates of pay are below those required by the California Labor Code, Defendant agrees that the computer software exemption does not apply to its members. However, it argues that some or all of the putative class members are subject to the administrative exemption of IWC Wage Order 4-2001.

---

[2] As of January 1, 2016, this amount was $87,185.14. *See* https://www.dir.ca.gov/dlse/LC515-5.pdf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

In response, Plaintiff argues that Defendant's affirmative defense as to the application of the administrative exemption concerns only a small, easily identifiable number of class members. As to any such persons, Plaintiff states that they will "either be voluntarily dismissed or subject to a separate (yet probably unified) determination of whether their work falls within [the exemption]." Dkt. 32 at 6.

**IV.     Analysis**

      A.     Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160; *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Although we have cautioned that a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (internal quotation marks and citations omitted)); Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. P. 23, 28 U.S.C. App. at 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

The first step in the analysis of a motion for class certification requires that a putative class representative show that each of the prerequisites of Rule 23(a) is met. *Wal-Mart*, 131 S. Ct. at 2551; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original).

If these four prerequisites are met, the analysis proceeds to a consideration whether the proposed class meets an applicable requirement of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). It provides in pertinent part that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," (Fed. R. Civ. P. 23(b)(2)), or "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

    B.    Application

        1.    <u>Whether the Requirements of Fed. R. Civ. P 23(a) Have Been Met</u>

            a)    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that, in order to be certified, a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Plaintiff estimates that the class is comprised of more than 400 members. Kellner Decl., Dkt. 29-2 ¶ 30. This is sufficient to make joinder of all class members impracticable. Defendant does not dispute that the numerosity requirement has been met. For these reasons, it has been satisfied.

            b)    Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendant has not challenged the adequacy of Plaintiff or his counsel to represent the putative class. Plaintiff has participated actively in this case and is fully prepared to attend trial. Payala Decl., Dkt. 29-2 ¶ 29. Further, class counsel has substantial experience handling large employment related class actions. Kellner Decl., Dkt. 29-2 ¶¶ 3-9. Plaintiff and his counsel each is adequate to pursue this action on behalf of the class.

            c)    Commonality

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks removed). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 2556 (internal quotation marks omitted).

Plaintiff contends that the commonality element is satisfied. Thus, he argues that there is a common legal issue: Whether the administrative exemption applies to job duties including computer trouble-shooting, testing and de-bugging of existing third party company's products. Plaintiff adds that resolution of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

issue is likely to be dispositive of the claims for all class members, or at least a large percentage of them based on their respective job titles.

Defendant's response addresses predominance -- the stricter common proof requirement of Rule 23(b)(3) that is discussed in detail below. Thus, Defendant argues that individualized issues predominate because the trier of fact will necessarily have to determine the individual work performed by each putative class member.

Courts ordinarily find that the commonality requirement is satisfied where a putative class of employees challenges their classification as exempt from overtime requirements under state labor laws. *See Benedict v. Hewlett-Packard Co.*, 2016 WL 1691893, at *10 (N.D. Cal. Apr. 8, 2016) (commonality satisfied where putative class members were similarly classified and shared a set of generic job descriptions, notwithstanding that they performed a variety of actual tasks); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006), *affirmed*, 464 F. App'x 636 (9th Cir. 2011) (commonalitiy satisfied where putative class challenged employer's exemption classification despite varying factual bases among class members)*; Sirko v. Int'l Bus. Machines Corp.*, 2014 WL 4452699, at *10 (C.D. Cal. Sept. 3, 2014) (same).

Here, the putative class members are all classified as exempt employees. Their work is designated within one or more of the same ten, generic job descriptions. Plaintiff has offered sufficient common questions for which an adjudication will offer common answers. These include whether the administrative exemption applies to technical job duties such as computer trouble-shooting, testing and de-bugging of existing products of third party companies. For these reasons, commonality has been satisfied.

        d)        Typicality

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if these claims "are reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. Representative claims "need not be substantially identical." *Id.*

Plaintiff contends that his claims are typical of those of the class because they are based on allegations that are substantially similar to those regarding members of the putative class. He argues that all focus on the misclassification of Plaintiff and the putative class members as exempt workers. Defendant argues that Plaintiff's claims are not typical of those advanced by the class because Plaintiff worked in just one of ten job titles at issue for one of 84 of Defendant's clients. Rodrigues Decl., Dkt. 30-6 ¶ 7 ("[T]here are 84 client assignments that were staffed by exempt level employees with the 10 job titles identified above who worked in California for the period of March 2011 through September 2015."); *see also id.* (Ex. B) (listing the 84 companies). And, as discussed more thoroughly below, Defendant has submitted evidence showing that the putative class members performed different functions depending on the position in which they worked.

Notwithstanding that there was some variation in the elements and duties of each of the relevant positions, Plaintiff's claims are reasonably co-extensive with those of absent class members. Thus, his claims arise from his position in providing computer-related services, he received compensation below the statutory threshold for California's computer software exemption to apply, and he has presented

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

evidence to support his position that he worked overtime hours for which he received no additional compensation. These elements apply to the claims of the members of the putative class. Further, Plaintiff's claims are premised on the contention that Defendant misclassified each putative class member based upon a similar misapplication of federal and California law.

For the foregoing reasons, this requirement is satisfied.

      2.      <u>Whether the Requirements of Fed. R. Civ. P 23(b) Have Been Met</u>

          a)      Legal Standard

Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3). That Rule requires the party seeking certification of a class to show: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are considered in making these determinations: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

          b)      Application

              (1)      <u>Predominance of Common Questions</u>

Generally, uniformity in work duties and experiences among class members will support a finding that common questions of law or fact predominate because there is less need for individualized inquires. See *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009). Plaintiff may establish that common issues predominate "through the submission of employee declarations demonstrating that all class members share the same finite job duties . . . ." *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 243 (C.D. Cal. 2007) (citations omitted). In cases that involve a "reasonably definite and finite list of tasks" that the proposed class members perform, resolution of whether certain tasks should be classified as exempt or non-exempt may be proper for class determination because a court can "assig[n] each task to one side of the 'ledger' . . . ." *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 330-31, 335 (2004); *see also Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 n.9 (C.D. Cal. 2006). The question of exemption turns on whether "defendants have made a common mistake with respect to all putative class members (*i.e.*, treating a non-exempt task as exempt)." *Hejfelfinger v. Electronic Data Systems Corp.*, 2008 WL 8128621 at *24 (C.D. Cal. Jan.7, 2008).

However, "in cases where exempt status depends upon an individualized determination of an employee's work, and where plaintiffs allege no standard policy governing how employees spend their time, common issues of law and fact may not predominate." *Vinole*, 571 F.3d at 946-47; *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953,959 (9th Cir. 2009) (fact-finder may need to "make a factual determination as to whether class members are actually performing similar duties.").

"Affirmative defenses should be considered in making class certification decisions." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) (quoting *Castano v. American Tobacco Co.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

84 F.3d 734, 744 (5th Cir. 1996) ("a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues")); *see also* Newberg on Class Actions § 4:55 (5th ed.) ("Defendants often plead affirmative defenses. Some of these defenses raise individualized issues. . . . The potentially individualized nature of affirmative defenses requires that courts consider such defenses in undertaking the predominance analysis."). As these rules show, the mere presence of an affirmative defense does not create a *per se* bar to class certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted).

Plaintiff argues that common issues predominate. In support of this position he identifies several common issues of fact and law relating to Defendant's failure to pay overtime to members of the putative class. These include: (i) "the existence and application of Wipro's company-wide overtime policies"; (ii) "the legal issue of whether the 'administrative' exemption can be extended to job duties of troubleshooting, testing and debugging of existing third party company's products"; and (iii) "the respective experts' methods for calculating damages based upon the electronic wage and time records maintained by Wipro." Dkt. 29 at 28. Plaintiff argues that whether the administrative exemption applies to those performing computer troubleshooting, testing and debugging of existing products of third parties will not only predominate, but will likely be case dispositive. Plaintiff claims to have narrowly tailored the class definition so that each putative class member has held a non-supervisory position whose primary job duties were to provide these services. As noted, Plaintiff cross-checked Defendant's job descriptions with task description entries in the time sheets provided for 160 sample employees to "ensure" that class members predominantly worked on such tasks.

Defendant responds that individualized issues predominate given its affirmative defense that each member of the putative class is subject to the administrative exemption. Under the first prong of the administrative exemption of IWC Wage Order 4-2001, an employee must perform "office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers." IWC Wage Order 4-2001 adds that the activities constituting exempt work and nonexempt work "shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215.E."

29 C.F.R. § 541.201 provides guidance as to the interpretation of the phrase "directly related to the management or general business operations." It states that this phrase:

> [I]ncludes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; *computer network, internet and database administration*; legal and regulatory compliance; and similar activities.

*Id.* § 541.201(b) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

*Combs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242, 1264-65 evaluated § 541.201(b) in connection with "computer network, internet and database administration." *Combs* held that the plaintiff in that action, who held the position of Director of Network Operations, met the requirements for the administrative exemption because his "core responsibility" was "maintaining the well-being of [his employer's] network." *Id.* at 1264. Substantial evidence demonstrated that the plaintiff in *Combs* was responsible for "maintaining, developing and improving [his employer's] network, and his duties involved high-level problem solving, preparing reports for [his employer's] board of directors, capacity and expansion planning, planning for the integration of acquired networks into [his employer's] network, lease negotiations, and equipment sourcing and purchasing." *Id.* Thus, the plaintiff's duties

> directly related to the management or general business operations within the meaning of the administrative exemption in IWC Wage Order No. 4-2001, because they directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment (29 C.F.R. § 541.201(a)); and his work included budgeting, purchasing, procurement, and computer network, internet and database administration (29 C.F.R. § 541.201(b)).

*Id.* at 1265 (internal quotation marks omitted).

The parties agree that putative class members primarily involved in "computer network and internet and database administration" work would fit within the administrative exemption. The parties disagree as to whether determining which putative class members fit into that definition will require a substantial amount of individualized inquiries.

Defendant contends that individualized issues will be necessary to determine which class members engaged in responsibilities that are vaguely defined as "maintaining the well-being of [the client's computer] network" or "high level problem solving" or "capacity and expansion planning" or "integration planning" or similar administrative duties. Defendant adds that the trier of fact would have to look at every job assignment for every computer technician at every third party client and would need to understand, consider and apply the technical jargon to each assignment. For example, Defendant describes Plaintiff's assignment at DirecTV. The written description for his position stated that he would be "responsible for providing architectural leadership for Wipro's tool set WiStream, envisioning, designing, creating frameworks supporting over 40 mission critical . . . servers used at broadcast center." Plaintiff Depo., Dkt. 30-2 at 68. The job description also stated that Plaintiff was responsible for "[w]orking with external teams to define and prioritize requirements, define and refine architecture approaches, ensure functional and performance excellence" and "[d]eliver[ing] technical collateral including technical case studies, proof of concepts, best practice guides, white papers and solution reference architecture to drive adaptation of WiStream tool set across teams." *Id.*

Defendant argues that Plaintiff's description of his work varies from this written description. Plaintiff described his position one in which he was "responsible for testing the DirecTV servers and their functionalities to determine if [they are] working according to the specification" and "within the performance parameters." *Id.* at 26:12-18. As Plaintiff explained, he was responsible for "software testing" that involved "writing test cues on the project and writing test scripts to test the performance of [the] server." *Id.* at 79:10-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

In further support of its position, Defendant discusses Jain's assignment at Mazda. As noted, Jain is a putative class member whose declaration was submitted in support of Plaintiff's Motion. Jain held the job title of "Technical Lead." Jain Depo., Dkt. 30-2 at 101:3-4. At his deposition, Jain testified that he was responsible for "designing" and "coding." Specifically, Jain "was responsible for the technical tasks, design software coding, and doing analysis for all the issues." *Id.* at 107:11-13. Jain's responsibilities also included "participating in designing the enhancement center requirements for the Siebel application." *Id.* at 108:12-16.

In response, Plaintiff argues that Defendant's affirmative defense applies only to a small subgroup of class members. They are ones assigned to identifiable Wipro "teams" that are devoted solely to "computer network" or "internet/database" work. For the majority of class members, Plaintiff argues that there is no similar defense, and none has been offered by Defendant.

District Courts in California have considered whether the presence of an affirmative defense would result in individualized inquires predominating at trial. Two cases are instructive.
In *Benedict v. Hewlett-Packard Co.*, 2016 WL 1691893 (N.D. Cal. Apr. 8, 2016), plaintiffs were former Hewlett-Packard ("HP") employees who sought certification of a class comprised of computer professionals who held three uniform job titles: Technical Solutions Consultant ("TSC") I, TSC II and TSC III. The TSCs "provided technical support for various arms of HP's Enterprise and Software Groups in California, Colorado and Massachusetts." *Id.* at *1. Plaintiffs argued that all of the putative class members performed the same "limited troubleshooting role" pursuant to "regimented procedural guidelines" and that HP misclassified them as exempt from overtime requirements, which resulted in unpaid overtime wages and other violations of federal and state labor laws. Defendant argued that there were significant differences among the actual work performed by different members of the putative class. From this it argues that plaintiffs had failed to meet their burden to show that the absence of the need to adjudicate the claims and defenses without individual inquiries.

*Benedict* denied class certification. It concluded that common issues did not predominate as to whether the potential members met the requirements for the administrative exemption under California Wage Order 4-2001. *Benedict* explained that employees may meet the requirements of the administrative exemption if they perform work involving "'computer network, internet and database administration' among other functions." *Id.* at *17 (citing 29 C.F.R. § 541.201(b)). *Benedict* also acknowledged that employees may also meet the requirements of the administrative exemption if they are "acting as advisors or consultants to their employers' clients or customers." *Id.* (citing 29 C.F.R. § 541.201(c)). It also concluded, however, that making these determinations would require a substantial number of individualized inquiries:

> Pursuant to these regulations, "technical support" work may or may not qualify as exempt, depending on the employee's specific duties. The question before the Court now is not whether the work of the TSCs I-III qualifies as exempt or non-exempt, but rather whether that question can be answered with the common evidence provided by Plaintiffs. The Court concludes that it cannot. Defendants are correct that individual inquiries would be necessary to determine what constitutes each TSC's primary duty because the evidence shows that TSCs have work experiences that differ in ways that go to the heart of the elements of the exemptions.

*Id.* at *18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

*Williams v. Lockheed Martin Corp.*, 2011 WL 2200631, at *1 (S.D. Cal. June 2, 2011) reached the same result. There, a class certification motion was denied in an action brought on behalf of employees who worked at a single location, for a single business and who held one of three job titles: "System Administrator," "Network Data Communications Analyst" and "Data Communications Senior Analyst." The plaintiff submitted the declarations of ten of the approximately 64 putative class members. Each stated that, as part of his or her actual duties, the declarant primarily performed "the same repetitive tasks of installing, configuring, maintaining, monitoring, testing, and/or troubleshooting computer equipment, applications and/or hardware." *Id.* at *2. Notwithstanding these declarations, *Williams* observed that the tasks "could be as simple as maybe two lines of code or . . . complicated with thousands of lines of changes, software changes." *Id.* at *11.

In concluding the predominance requirements under Rule 23(b)(3) were not satisfied, *Williams* stated that "the broad categories of work including installation, configuring, troubleshooting, and maintenance, encompass varying tasks with varying levels of complexity which are executed with varying levels of judgment. The evidence fails to show that the tasks performed by the proposed class members are 'reasonably definite.'" *Id.* at *12. Thus, "individual inquiries are necessary to determine whether class members are actually performing similar duties." *Id.*

Similar facts were presented in *Sepulveda*, 237 F.R.D. 229, *aff'd*, 464 F. App'x 636. There, the putative class was comprised of employees who held positions as assistant managers for Wal-mart Stores, Inc. In general, the assistant managers were "required to implement all Wal-Mart policies and procedures." *Id.* at 239. However, the defendant submitted evidence to support its position that the duties of an assistant manager varied widely from store to store. It also claimed that the individual stores varied substantially in the "size and composition of the hourly workforce and management structure, the size and sales volume of the store, store location, hours of operation, the age and experience of store associates, the age of the store, and shrink levels." *Id.*

*Sepulveda* explained that the defendant was "entitled to raise exempt status as a defense and to present evidence showing that the [assistant managers] actually did perform primarily exempt tasks." *Id.* at 249. Based on all of this evidence, the District Court concluded that "such proof w[ould] be highly individualized." *Id.*

As noted above, members of the putative class in the present action hold ten different job titles, including: (i) Solutions Delivery Analyst; (ii) Specialist; (iii) Technical Lead/Leader; (iv) Architect; (v) Test Lead; (vi) Project Lead/Leader; (vii) Consultant [including Associate and Technical Consultant]; (viii) Project Engineer; (ix) Sr. Test Engineer; and (x) Sr. Software Engineer. The work is performed for approximately 84 different companies whose work involves a range of businesses -- Apple, Bank of the West, BP, Charles Schwab, Citi Bank, CVS Caremark, DirecTV, Federal Express, Glaxo Smithkline, Honda, Kellogg's, Kohl's Department Stores, Mattel, Mazda Motor Corp., Nestle, Petco, San Mateo County, Sony, U.S. Bank, and Wal-Mart. Rodrigues Decl., Dkt. 30-6 ¶ 7 ("[T]here are 84 client assignments that were staffed by exempt level employees with the 10 job titles identified above who worked in California for the period of March 2011 through September 2015."); *see also id.* (Ex. B) (listing the 84 companies).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

Plaintiff responds that, notwithstanding titles or locations, each class member performed comparable duties. These primarily involving "computer troubleshooting, testing and debugging of existing third party company's products." There is limited evidence offered in support of this position. It includes a spreadsheet generated by Wipro's TMS system that includes the following information for putative class members: (i) "the employee identification number"; (ii) "task description"; (iii) "hours devoted to Project Efforts"; (iv) "hours devoted to Non-Project Efforts"; (v) the "Effort Date (*i.e.*, the date when the task was performed)"; (vi) the "location where the work was performed"; and (vii) the "date the time was entered." Kellner Decl., Dkt. 29-2 ¶ 23 (citing *id.* (Ex. I)). Kellner, who is counsel to Plaintiff, states that, together with Plaintiff, he "conducted a comprehensive review of the job descriptions provided by Wipro for the job titles that Plaintiff included in the original class definition." *Id.* ¶ 24. This review "took into account [Plaintiff's] knowledge of the type of work generally associated with each of the job titles to preliminarily determine which job titles were non-supervisory, in which their primary job duties are computer troubleshooting, testing and debugging of existing third party company's products." *Id.* To "verify the correctness of the class definition," Kellner and Plaintiff subsequently "cross-checked Wipro's job descriptions with 'task description' entries in the time sheets for the 160 employee sampling provided in discovery, to ensure that the class members predominately worked on troubleshooting, testing and debugging of existing third party company's products." *Id.* ¶ 25. This analysis led to the current list of ten job titles included in the class definition. *Id.* ¶¶ 26-27.

A review of the aforementioned spreadsheet shows that the "task descriptions" are generic and imprecise. They include "Huddle Process," "Design," "Coding and Unit Testing," "Analysis," "Rework," "Technical Documentation" and "Training." *Id.* (Ex. I). There is no additional explanation. Kellner points out that Plaintiff's "knowledge of the type of work generally associated with each of the job titles" was instrumental in making sense of these task descriptions. However, Plaintiff has not provided any evidence showing that some or all of these different task descriptions are uniformly understood, adopted, applied or understood by the 84 employers at issue in this case. For example, "Design" may actually involve very different tasks for a "Specialist" employed at Apple than for a "Consultant" employed at Mattel. Thus, there is no evidence that the various Wipro clients used standard criteria in defining and using these terms. *See Vinole*, 571 F.3d at 946-47 (individualized issues predominate where plaintiffs allege "no standard policy governing how employees spend their time").

Also significant is that Plaintiff did not submit evidence of any uniform job descriptions for the ten job titles included in the class definition. This absence of evidence is noteworthy in light of Kellner's reference to a document containing "job descriptions." Kellner Decl., Dkt. 29-2 ¶ 24. Further, at his deposition, Plaintiff testified about the absence of uniform job descriptions for each of the identified job titles:

> Q: So even though someone had an L1 architect title, they could be doing different jobs?
> A: That's correct.
> Q: There isn't a single job description for an L1 architect?
> A: There will be a description for each business unit.
> Q: So each business unit of Wipro --
> A: Yes.
> Q: -- would have a separate job description for an L1 architect; right?
> A: That's my understanding.

Pl. Depo., Dkt. 30-2 at 60:22-61:8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
|---|---|---|---|
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

Defendant has submitted evidence that provides some support for its position that there is a substantial variance among the job titles and tasks performed by members of the putative class. Defendant notes that Wipro had a "separate contract with [each] outside customer to provide a specified component of services." *Id.* at 20:16-19. At his deposition, Plaintiff explained that "different clients of Wipro had different projects" and "the clients of Wipro might have a variety of different projects within the same client." *Id.* at 21:11-13. Plaintiff agreed that "different clients had different approaches as to how they staffed assignments." *Id.* at 30:22-23. Plaintiff further acknowledged that "Wipro offered dozens and dozens of professional services where [he] [didn't] have any understanding or involvement of what the employees in those services were doing." *Id.* at 37:4-8. Plaintiff also forthrightly conceded that even if Wipro exempt employees had the same job title, they could possibly be doing very different things -- "so there could be someone who had an L1 architect title and someone else who had the same L1 architect title and they could be doing very different things." *Id.* at 43:8-12.

Other evidence offered by Defendant provides some additional support for its position that at least certain of the putative class members perform duties that could be classified as "administrative." Declarations of Mayala Kishore Panda, Simi Scaria and Bala Ramakrishna each describes work involving computer network and Internet/database operations. *See* Dkt. 30 at 30-31. Plaintiff does not contest that certain putative class members may fit within the administrative exemption, but argues that only a "small number" of Wipro employees will meet the requisite standards. Dk. 32 at 10. Plaintiff also notes that at trial, "Wipro will have the burden of identifying and proving which putative class members are subject to the narrow administrative exemption as applied to computer software workers." Dkt. 32 at 10. But, because Wipro contends that all putative class members are within this exemption, trial is likely to involve multiple mini-trials regarding the specific job duties of Wipro's computer professionals.

Plaintiff has failed to submit evidence that sufficiently rebuts the reasonable conclusion that performing "computer trouble-shooting, testing and de-bugging of existing third party company's products" involves a range of activities that class members perform, some of which may fit within the administrative exemption. Plaintiff's failure to do so supports the conclusion that fact-intensive, individual inquiries will be necessary to determine whether class members are actually performing similar duties, and whether those duties fit within the administrative exemption.

(2)    <u>Superiority</u>

"If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not superior." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (internal quotation marks omitted). As discussed above, the determination of whether or not the putative class members are exempt would require individual inquiries, Plaintiff has also failed to carry his burden under the superiority prong of Rule 23(b)(3).

**V.    Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**. Plaintiff has failed to demonstrate that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-04063 JAK (JPRx) | Date | August 23, 2016 |
| Title | Suri Payala v. Wipro Technologies, Inc., et al. | | |

common questions will predominate at trial and that a class action is superior to other available methods for fairly and efficiently adjudicating the issues presented in this action.

**IT IS SO ORDERED.**

                                                                                               :

Initials of Preparer   ak